IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: MARK SEED COMPANY,<br><br>Debtor. | Case No. 14-02984-als11 |

## DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE FOR THE JOINT CHAPTER 11 PLAN OF REORGANIZATION

Bradley R. Kruse, Esq.
**BROWN, WINICK, GRAVES, GROSS, BASKERVILLE & SCHOENEBAUM, P.L.C.**
666 Grand Avenue, Suite 2000
Des Moines, IA  50309-2510
Telephone:  515-242-2460
Facsimile:  515-323-8560
Email:  kruse@brownwinick.com
*Counsel for the Debtor and Debtor in Possession*

Matthew E. McClintock, Esq.
Brian J. Jackiw, Esq.
Sean P. Williams, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
208 South LaSalle, Suite 1750
Chicago, Illinois  60604
Telephone:  312-337-7700
Facsimile:  312-277-2305
*Counsel for the Official Committee of Unsecured Creditors*

THIS IS NOT A SOLICITATION OF ACCEPTANCES OF THE JOINT CHAPTER 11 PLAN OF REORGANIZATION.   ACCEPTANCES MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE.   THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL, BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT AND IS SUBJECT TO AMENDMENT.

Table of Contents

I.     Introduction ................................................................................................4
    A.    Purpose of This Document ................................................................5
    B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ............5
        1.    Time and Place of the Hearing to Confirm the Plan ................................5
        2.    Deadline for Voting to Accept or Reject the Plan ................................5
        3.    Deadline for Objecting to Confirmation of the Plan ................................5
        4.    Identity of Person to Contact for More Information ................................6

II.    Background ................................................................................................7
    A.    Description and History of the Debtor's Business ................................7
    B.    Events Leading to the Debtor's Chapter 11 Filing ................................7
    C.    Significant Events During the Bankruptcy Case ................................8
    D.    Recovery of Potential Avoidance Actions ................................9
    E.    Claims Objections ................................................................9
    F.    Current and Historical Financial Conditions ................................9

III.   The Plan of Reorganization and Treatment of claims and Equity Interests ................10
    A.    Purpose of the Plan of Reorganization ................................10
    B.    Explanation of Classes of Claims and Equity Interests ................................11
        1.    Classes of Secured Claims ................................11
        2.    Classes of Priority Unsecured Claims ................................11
        3.    Classes of General Unsecured Claims ................................11
        4.    Class of Equity Interest Holders ................................11
    C.    Overview - Treatment of Claims and Interests under Plan ................................11
    D.    Treatment of Unclassified Claims ................................13
        1.    Administrative Expenses ................................13
        2.    Priority Tax Claims ................................14
    E.    Treatment of U.S. Trustee Fees ................................15
    F.    Claims ................................................................15

IV.   Allowance and Disallowance of Claims ................................15
    A.    Disputed Claims ................................................................15
    B.    Settlement of Disputed Claims ................................15
    C.    Alternative Treatment ................................15
    D.    Postpetition Interest ................................16

V.    Means of Implementing the Plan ................................16
    A.    Creation of Creditor Trust ................................16
    B.    Vesting of Assets in the Creditor Trust ................................16
    C.    Sales of Assets ................................................................17
    D.    Dissolution of Debtor ................................17
    E.    Oversight Committee ................................18
    F.    Corporate Action ................................18
    G.    Sale Free and Clear ................................19
    H.    Effective Date Transactions ................................19

i

|       | I.    | Preservation of Rights of Action; Settlement of Claims and Releases .............. 19 |
|       | J.    | Treatment of Executory Contracts and Unexpired Leases .................................. 20 |
|       | K.    | Final Decree – Closing the Bankruptcy Case ....................................................... 22 |

VI.    Provisions Governing Plan Distributions ........................................................................ 22
    A.    Timing and Effective Date of Distributions .............................................................. 22
    B.    Method of Distributions to Holders of Claims ......................................................... 22
    C.    Delivery of Distribution ............................................................................................ 22
    D.    Tax Identification Numbers and OFAC Certifications ............................................. 22
    E.    Undeliverable Distributions ...................................................................................... 23
    F.    Setoffs ....................................................................................................................... 23
    G.    Allocation of Payments ............................................................................................ 23
    H.    Postpetition Interest .................................................................................................. 24
    I.    Settlement of Claims and Controversies ................................................................... 24

VII.   Provisions Governing Treatment of claims .................................................................... 24
    A.    Procedures for Resolving Disputed Claims .............................................................. 24
        1.    Prosecution of Objection to Claims ................................................... 24
        2.    Time for Objecting to Claims ............................................................. 24
        3.    Treatment of Disputed Claims ............................................................ 25
    B.    Enforcement of Bar Date Order ................................................................................ 25

VIII.  Confirmation Requirements and Procedures .................................................................. 25
    A.    Overview of Requirements ........................................................................................ 25
    B.    Who May Vote or Object .......................................................................................... 25
    C.    What Is an Allowed Claim or an Allowed Equity Interest? ..................................... 25
    D.    What Is an Impaired Claim or Impaired Equity Interest? ........................................ 26
    E.    Who Is Not Entitled to Vote? .................................................................................... 26
    F.    Who Can Vote in More Than One Class? .................................................................. 26
    G.    Votes Necessary to Confirm the Plan ....................................................................... 26
        1.    Votes Necessary for a Class to Accept the Plan ................................ 27
        2.    Treatment of Nonaccepting Classes ................................................... 27
    H.    Feasibility of the Plan ............................................................................................... 27
    I.    Best Interests Test ..................................................................................................... 27

IX.    Effect of Confirmation of Plan ....................................................................................... 28
    A.    Discharge ................................................................................................................... 28
    B.    Binding Effect ........................................................................................................... 28
    C.    Vesting of Property ................................................................................................... 29
    D.    Releases ..................................................................................................................... 29
        1.    Releases by Debtor .............................................................................. 29
        2.    General Releases by Holders of Claims or Interests .......................... 30
        3.    Release of Liens .................................................................................. 30
        4.    Injunction Related to Releases ............................................................ 30
        5.    Cancellation and Surrender of Instruments, Securities and Other
            Documentation ................................................................................... 31
    H.    Exculpation ............................................................................................................... 31

      I.       Preservation of Causes of Action / Reservation of Rights ....................................31

X.     Modification of the Plan ..........................................................................................32

XI.    Certain Federal Income Tax Consequences of the Plan ..................................................32

XII.   Alternatives to Confirmation and Consummation of the Plan.........................................32
      A.     Alternative Plan(s) ...............................................................................33
      B.     Liquidation under Chapter 7.................................................................33

XIII.  Certain Factors to Be Considered.......................................................................34

XIV.  RISK FACTORS ........................................................................................................34
      A.     Risks in connection with the Reorganization Case.............................34
              1.     Risk of Non-Confirmation of the Plan ....................................34
              2.     Nonconsensual Confirmation....................................................35
              3.     Conditions Precedent to the Effectiveness of the Plan............35
              4.     The Debtor May Object to the Amount, or the Secured or Priority
                      Status, of a Claim ....................................................................35
              5.     Causes of Action .....................................................................35
               6.     Failure to Enter Into a Sale Transaction or Refinancing
                      Transaction ..............................................................................35

XV.   General Provisions...................................................................................................36
      A.     Definitions and Rules of Construction..............................................36
      B.     Captions and Headings .......................................................................36
      C.     Corporate Governance ........................................................................36
      D.     Severability..........................................................................................36
      E.     Governing Law ....................................................................................36
      F.     Successors and Assigns.......................................................................36

> **THE VOTING DEADLINE TO ACCEPT OR REJECT
> THE PLAN IS 4:00 P.M. CENTRAL TIME ON
> [_____], 2015 UNLESS EXTENDED BY ORDER
> OF THE UNITED STATES BANKRUPTCY COURT
> FOR THE SOUTHERN DISTRICT OF IOWA.**

## DISCLAIMERS

THIS DISCLOSURE STATEMENT, THE JOINT CHAPTER 11 PLAN OF REORGANIZATION, EXHIBITS ANNEXED HERETO, ACCOMPANYING BALLOTS AND RELATED MATERIALS DELIVERED TOGETHER HEREWITH ARE BEING FURNISHED BY THE DEBTOR TO RECORD HOLDERS OF IMPAIRED CLAIMS AND EQUITY INTERESTS KNOWN TO THE DEBTOR, PURSUANT TO SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE IN CONNECTION WITH SOLICITATION OF VOTES TO ACCEPT THE PLAN AS DESCRIBED HEREIN.

THE CONFIRMATION AND EFFECTIVENESS OF THE PLAN ARE SUBJECT TO MATERIAL CONDITIONS PRECEDENT, SOME OF WHICH MAY NOT BE SATISFIED. SEE "THE PLAN – CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN." THERE IS NO ASSURANCE THAT THESE CONDITIONS WILL BE SATISFIED OR WAIVED.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST, AND HOLDERS OF EQUITY INTERESTS IN, THE DEBTOR (INCLUDING, WITHOUT LIMITATION, THOSE HOLDERS OF CLAIMS WHICH DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN OR WHICH ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS THAT ARE ELIGIBLE TO VOTE ON THE PLAN ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

ALL SUMMARIES OF THE PLAN AND OTHER STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, RELATED DOCUMENTS, AND THE EXHIBITS ANNEXED TO THIS DISCLOSURE STATEMENT.  IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN OR THE APPLICABLE PLAN DOCUMENTS AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN OR THE APPLICABLE PLAN DOCUMENTS ARE CONTROLLING.  THE SUMMARIES OF THE PLAN AND THE PLAN DOCUMENTS IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE

SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE PLAN AND THE APPLICABLE PLAN DOCUMENTS, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN THE PLAN AND SUCH PLAN DOCUMENTS.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS OTHERWISE INDICATED, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT, UNDER ANY CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME SUBSEQUENT TO THE DATE HEREOF AND THE DEBTOR UNDERTAKES NO DUTY TO UPDATE THE INFORMATION CONTAINED HEREIN.

[THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE.]

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, THE PLAN OR THE EXHIBITS ANNEXED TO THIS DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED IN THIS DISCLOSURE STATEMENT OR OTHER DOCUMENT RELATED TO THE PLAN. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE DEBTOR AND, TO THE BEST OF THE DEBTOR'S KNOWLEDGE, IS ACCURATE.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS, THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AND MAY NOT BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS AND SHALL BE INADMISSIBLE FOR ANY PURPOSE ABSENT THE EXPRESS WRITTEN CONSENT OF THE DEBTOR AND THE PARTY AGAINST WHOM SUCH INFORMATION IS SOUGHT TO BE ADMITTED.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. THE DESCRIPTIONS SET FORTH HEREIN OF THE ACTIONS, CONCLUSIONS, OR RECOMMENDATIONS OF THE DEBTOR OR ANY OTHER PARTY IN INTEREST HAVE BEEN PASSED UPON BY SUCH PARTY, BUT NO SUCH PARTY MAKES ANY REPRESENTATION OR WARRANTY REGARDING SUCH DESCRIPTIONS. NO REPRESENTATIONS ARE AUTHORIZED BY THE BANKRUPTCY COURT CONCERNING THE DEBTOR, ITS BUSINESS OPERATIONS, THE VALUE OF ITS ASSETS OR THE VALUES OF THE SECURITIES DESCRIBED HEREIN TO BE ISSUED OR BENEFITS OFFERED PURSUANT TO THE PLAN, EXCEPT AS EXPLICITLY SET FORTH IN THIS DISCLOSURE STATEMENT. HOLDERS OF CLAIMS AND/OR EQUITY INTERESTS SHOULD NOT RELY UPON ANY REPRESENTATIONS OR

INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT WILL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR WILL IT BE CONSTRUED TO CONSTITUTE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE REORGANIZATION AS TO HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR.

## I.      INTRODUCTION

This Disclosure Statement is intended to provide creditors and parties in interest with an overview of the Joint Chapter 11 Plan of Reorganization (the "*Plan*") which has been jointly prepared by the Debtor and the Official Committee of Unsecured Creditors (the "*Committee*") and filed in the Debtor's chapter 11 case captioned above (the "*Chapter 11 Case*").[1]

The primary purpose of the Plan is to maximize the value of the Debtor's assets for the benefit of the Estate and its Creditors by effectuating a sale or sales of such assets, with the net proceeds then distributed to creditors in accordance with the provisions of the Plan.  In order to efficiently accomplish the foregoing, the Plan contemplates assigning all of the Debtor's assets to a Creditor Trust.  The Creditor Trust will be administered by an experienced financial professional, initially Russ Long of O'Keefe & Associates Consulting, LLC – the Committee's financial advisor.

The Debtor has received an offer from Winterquist Investments, L.L.C. to purchase substantially all of the Debtor's assets free of all liens claims and encumbrances.  The Debtor has sought court approval of this transaction pursuant to a pending motion to approve the sale with the Bankruptcy Court.  The Debtor and the Committee anticipate and are hopeful that the Court will approve the sale of the Debtor's assets to Winterquist Investments, L.L.C., and that such sale will promptly close thereafter.  However, the Plan provides that the Debtor and or the Creditor Trustee may attempt to sell the Debtor's assets to a different entity or entities in the event the sale to Winterquist Investments, L.L.C. is terminated for any reason.

If the sale to Winterquist Investments, L.L.C. does not timely close, the Creditor Trustee shall have discretion over whether to continue to operate the business in an effort to consummate a "going-concern" sale (for up to 120 days, or longer with Court approval) or to liquidate the Debtor's assets in a different manner.  Although the process of determining how best to maximize the sale proceeds for the Debtor's assets is continuing, the Debtor and Committee agree that appointing an independent financial professional to make that decision (assuming a sale is not underway or consummated upon his appointment) – and empowering that professional to then consummate sales without further Court approval (in order to reduce costs and delay), object to and settle claims, and to ultimately make distributions in accordance with the Plan, is in the best interests of all constituencies in the Debtor's Chapter 11 Case.  Accordingly, THE DEBTOR AND THE COMMITTEE URGE ALL CREDITORS TO SUPPORT THE PLAN.

The purpose of this Disclosure Statement is to provide "adequate information" to Entities that hold Claims and Equity Interests to enable them to make an informed decision before exercising their right to vote to accept or reject the Plan.  By order of the Bankruptcy Court entered on [_____], 2015, this Disclosure Statement was approved and held to contain adequate information.

The Plan provides for classification and treatment of various classes of secured claims, priority claims, unsecured claims; and equity security holders.  The Plan also provides for the payment of administrative and priority tax claims.  The treatment of these classes – including the order in which they will receive distributions – is discussed below.

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

The Plan also provides detailed information regarding the terms for payment of the Debtor's Creditors and other information designed to assist Creditors and equity security holders in determining whether to accept the Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### A.      Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case.
- Historical information regarding the Debtor and the events leading to its bankruptcy filing.
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, how your claim or equity interest will be treated if the Plan is confirmed).
- Who can vote on or object to the Plan.
- What factors the Bankruptcy Court will consider when deciding whether to confirm the Plan.
- Why the Debtor and the Committee believe the Plan is in the best interests of Creditors.
- The effect of Confirmation of the Plan.

### B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan. This section describes the procedures under which the Plan will or will not be confirmed.

#### 1.      Time and Place of the Hearing to Confirm the Plan

The hearing at which the Court will consider confirmation of the Plan will take place on [_____], 2015, at[ _____] [_].m. in Courtroom 2, at the United States Bankruptcy Court for the Southern District of Iowa, Des Moines, Iowa.

#### 2.      Deadline for Voting to Accept or Reject the Plan

If you are entitled to vote to accept or reject the Plan, vote using the enclosed ballot and return the ballot in the enclosed envelope to Bradley R. Kruse, Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., 666 Grand Avenue, Suite 1200, Des Moines, IA 50309-2510. *See* Article IX, Section B below for a discussion of voting eligibility requirements.

Your ballot must be received by 4:00 p.m. CDT on [_____], 2015, or it will not be counted.

#### 3.      Deadline for Objecting to Confirmation of the Plan

Objections to confirmation of the Plan must be filed with the Court and served upon the Debtor's Counsel, Counsel for the Committee, the Office of the United States Trustee, and all other Creditors and/or interested parties who have filed notices of appearances and requests for special

notice by [_____], 2015.  Objections shall be served on Debtor's Counsel at:

> Bradley R. Kruse, Esq.
> Brown, Winick, Graves, Gross,
> Baskerville and Schoenebaum, P.L.C.
> 666 Grand Avenue, Suite 2000
> Des Moines, IA 50309-2510

On Counsel for the Committee at:

> Brian Jackiw, Esq.
> Goldstein & McClintock LLLP
> 208 South LaSalle, Suite 1750
> Chicago, IL  60604

And on the United States Trustee at:

> Jim Snyder
> Office of the United States Trustee
> Room 793 Federal Bldg.
> 210 Walnut Street
> Des Moines, IA  50309

     4.      Identity of Person to Contact for More Information

If you want additional information about the Plan, you should contact the Debtor's General Reorganization Counsel:

> Bradley R. Kruse, Esq.
> Brown, Winick, Graves, Gross,
> Baskerville and Schoenebaum, P.L.C.
> 666 Grand Avenue, Suite 2000
> Des Moines, IA 50309-2510
> Telephone:  515-242-2460
> Facsimile:  515-323-8560
> E-mail:  kruse@brownwinick.com

or Counsel for the Official Committee of Unsecured Creditors:

> Brian Jackiw, Esq.
> Goldstein & McClintock LLLP
> 208 South LaSalle, Suite 1750
> Chicago, IL  60604
> Telephone:  312-337-7700
> Facsimile:  312-277-2305

## II.    BACKGROUND

### A.    Description and History of the Debtor's Business

The Debtor is an Iowa Corporation organized under Subchapter S of Section 490 of the Iowa Code on January 1, 1989, and is in good standing with the Secretary of State for the State of Iowa.

The Debtor is an independently held regional seed distribution company headquartered in Perry, Iowa which distributes grassland seed products such as corn, soybeans, alfalfa, oats and turf seeds.  Additionally, the Debtor breeds, develops, markets and sells its own lines of various seeds.  The Debtor operates a warehouse which serves as a grain storage facility for all grain seed prior to distribution to its customers.

The Debtor is the owner of three patents for an invention, Cyst Tech, a process that controls and reduces the soybean cyst nematode.  Using the Cyst Tech process generally results in a higher yield of soybeans when used as prescribed.  The process was crafted, refined, and developed into three registered patents by one of the company's owners, Mark Terpstra, during the period 2007 to 2009.  Since receiving its three patents, Mark Seed Company has further developed, tested and marketed the Cyst Tech process.  These internal tests confirmed what had already been reported by satisfied customers and observed by Mr. Terpstra: the Cyst Tech process controls and reduces the soybean cyst nematode, resulting in a higher per-acre yield.

The Company and its stakeholders have been financially restricted from being able to maximize the full market potential of the Cyst Tech patent and process.  All of the Company's shares of stock were owned by Mark Terpstra and his brother Steve Terpstra until February 2015, when Steve Terpstra passed away unexpectedly.  The Company has not had the capital to truly exploit the potential that it believes exists in the Cyst Tech process.

On or about November 10, 2010, the Debtor entered into a loan agreement with Valley Bank as lender and the United States Small Business Administration as guarantor pursuant to which the Debtor borrowed $1.25 million (the "*Valley Bank Loan*").  Valley Bank failed in June of 2014, and the rights associated with the Valley Bank Loan are now allegedly held by ReadyCap Lending, LLC ("*ReadyCap*").  When the Chapter 11 Case was filed, per the Debtor's schedules, ReadyCap was owed $967,819.52.  As a result of Steve Terpstra's death, the ReadyCap was entitled to the death benefit proceeds pursuant to a life insurance policy in Steve Terpstra's name.  Such proceeds were paid to ReadyCap Lending in April, 2015, as the Debtor had pledged that insurance policy to Ready Cap, significantly reducing the balance owed.  The balance as of the date hereof on the Debtor's loan with Ready Cap is $164,491.

Since October 2013, at the direction of ReadyCap, Mark Seed Company has been managed by Paul Aschim and Bill Pim, each appointed as an acting Co-Chief Financial Officer.  During their tenure, Mr. Aschim and Mr. Pim have been responsible for all of the Company's management and financial decision making.

### B.    Events Leading to the Debtor's Chapter 11 Filing

The Debtor began experiencing financial difficulties in the aftermath of the 2008-09 financial

crisis.  In September, 2014, the Debtor's licensing agreement with Monsanto was terminated due
to the Debtor's inability to pay the royalties due under the agreement.  Following the termination
of such licensing agreement, the Debtor's cash flow was further negatively impacted.    The
Debtor filed its chapter 11 proceeding in order to maintain its license agreements for other
products and attempted to restructure its financial affairs and/or sell its business.

C.    **Significant Events During the Bankruptcy Case**

1.    Initiation of Bankruptcy Case

The Debtor voluntarily filed for protection under chapter 11 of the Bankruptcy Code on
December 26, 2014.

2.    Employment of Professionals

The Debtor filed its application to employ Bradley R. Kruse and the law firm of Brown, Winick,
Graves, Gross, Baskerville and Schoenebaum, P.L.C. ("*Brown Winick*") as its General
Reorganization Counsel (Docket No. 6) on January 9, 2015.  On March 24, 2015, 2015, the
Court entered its order approving the Debtor's employment of Brown Winick as General
Reorganization Counsel (Docket No.  67).

3.    Appointment of the Official Committee of Unsecured Creditors

On January 13, 2015, the Office of the United States Trustee filed its Notice of Appointment of
Creditors Committee (Docket No. 9).  The Committee is comprised of representatives Bayer
CropScience, LP, LeLand Boyd, Larson Grain Company, Smart Seeds, Inc., and Hoffman Seed
House.  Mark Larouche of Bayer CropScience LP is the Committee chairman.

4.    Employment of Professionals by the Official Committee of Unsecured
      Creditors

On January 28, 2015, the Committee filed its application to employ the law firms of Goldstein &
McClintock LLLP ("*G&M*") as counsel to the Committee (Docket No. 21, as amended on
Docket No. 32) and Person Fiegen Law Firm, P.C. ("*Person Feigen*") as Local Counsel to the
Official Committee of Unsecured Creditors (Docket No. 22 as amended on Docket No. 33).  On
February 24, 2015, the Court entered its Orders authorizing the Committee to employ G&M as
its counsel (Docket No. 50) and Person Feigen as its local counsel (Docket No. 51).

On January 28, 2015, the Committee also filed its application to employ O'Keefe & Associates
Consulting, LLC ("*O'Keefe*") as financial advisor to the Committee (Docket No. 23 as amended
on Docket No. 34).   On February 24, 2015, the Court entered its Order authorizing the
Committee to employ O'Keefe as its financial advisor (Docket No. 52).

5.    Motion to Sell Substantially all of the Debtor's Assets

On August 7, 2015 Debtor's Motion (the "*Sale Motion*") for Order Approving the Sale of
Substantially all of the Debtor's Assets, Free and Clear of all Liens, Claim and Encumbrances
filed whereby the Debtor seeks approval to sell substantially all of its assets to Winterquist

Investments, L.L.C. ("*Winterquist*") pursuant to the terms of that certain Asset Purchase Agreement (the "*Winterquist Asset Purchase Agreement*") dated August, 2015 by and between the Debtor and Winterquist and attached as Exhibit A to the Sale Motion as such agreement may be amended from time to time thereafter (the "*Winterquist Transaction*") (Docket No. 91).

Pursuant to the Winterquist Asset Purchase Agreement, Winterquist will buy substanitaly all of the Debtor's assets for $881,250 cash, subject to $125,000 being deposited into an escrow account in the event that there are environmental issues related to the Real Property Assets. At the end of six months, the escrow funds will be disbursed either to Winterquist in an amount sufficient to cover any environmental liabilities or to the Debtors (or the Creditor Trust) in the amount of $125,000 less any amounts paid to Winterquist.

The Debtor anticipates that the Winterquist transaction will close on or before September 15, 2015, unless the Debtor and Winterquist agree to extend such date.

### D.      Recovery of Potential Avoidance Actions

The Debtor has identified various potential avoidance actions arising under 11 U.S.C. § 547 pursuant to the list of payments made to Creditors within the 90-day period immediately preceding the commencement of this case set forth on Addendum No. 3(b) to the Debtor's Statement of Financial Affairs.  Many of the defendants to such potential avoidance actions arising under 11 U.S.C. § 547 are currently supplying goods and services to the Debtor and/or may have defenses to such preference actions.  As a result, and in part depending on how the Debtor's assets are sold, it may not be in the Debtor's interest to pursue such preference actions. The Debtor and the Committee are currently evaluating such actions and anticipate that they (or the Creditor Trustee) will make decisions as to which, if any, preference actions to bring at or after the Effective Date.

### E.      Claims Objections

Pursuant to the Court's Notice to all Creditors (Docket No. 3) filed on January 7, 2015, April 28, 2015 was set as the bar date (the "Bar Date") for timely filing Proofs of Claim in the Bankruptcy Case.   As of the Bar Date, 28 filed proofs of claim in the aggregate amount of $3,275,093.63. Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor and the Creditor Trustee reserve the right to object to such claims. Therefore, even if a claim is allowed for voting purposes, a creditor may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are stated in Article IV of the Plan.

The Debtor is in the process of reviewing all claims and, where possible, working to amicably resolve such claim issues with each respective claimant.

### F.      Current and Historical Financial Conditions

As of August 1, 2015, the Debtor's assets consisted of the following (note that all of the values below are approximate, and for non-liquid assets such as real estate, the values have been obtained from the Debtor's schedules and may not represent actual market value.  In addition, please be aware that the below treats the value of several classes of assets – causes of action that

the Debtor and/or the Creditor Trustee might be able to pursue, good will, the Debtor's customer list, and the Debtor's patent portfolio – as "unknown" given current uncertainty over the value of such assets and whether such value can or will be realized):

    A.  Cash – $1,008,575

    B.  Accounts Receivable – $555,075

    C.  Inventory – $20,000

    D.  Machinery and Equipment – $121,575

    E.  Vehicles – $68,200

    F.  Real Estate – $208,220.

    G.  Cys Tech Patents – Unknown (cost of developing them was $206,000.00)

    H.  Possible Litigation Claims – Unknown

    I.  Customer List/Good will – Unknown

    TOTAL -- $1,981,645

## III.    THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    Purpose of the Plan of Reorganization

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor is authorized to reorganize, sell, or liquidate its business for the benefit of its creditors – in other words, chapter 11 provides a debtor with some flexibility, allowing it, subject to oversight, to work to identify the best means of maximizing creditor recoveries. In furtherance of the goals of the Bankruptcy Code, upon the filing of a petition for relief under chapter 11, section 362 of the Bankruptcy Code provides for an automatic stay of substantially all acts and proceedings against the debtor and its property, including all attempts to collect claims or enforce liens that arose prior to the commencement of the chapter 11 case.

The consummation of a chapter 11 plan is typically the principal objective of a chapter 11 case. A chapter 11 plan sets forth the mechanism that the Debtor has determined is best suited for satisfying creditor claims. A plan will typically separate creditors into "classes" reflecting the fact that some creditors get paid ahead of others under the Bankruptcy Code, and explains how the debtor or another party will object to claims as needed and ultimately make distributions.

Confirmation of a chapter 11 plan by the bankruptcy court makes the plan binding upon the debtor, any issuer of securities under the plan, any entity acquiring property under the plan, and any creditor of, or equity holder in, the debtor, whether or not such creditor or equity security holder: (i) is impaired under the plan; (ii) has accepted the plan; (iii) voted against the plan, or

(iv) receives or retains any property under the plan.

**B.    Explanation of Classes of Claims and Equity Interests**

1.    Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate to the extent allowed as secured claims under section 506 of the Bankruptcy Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in sections 507(a) (4) and (6) of the Bankruptcy Code are required to be placed in classes. The Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date of the Plan equal to the allowed amount of such claim. However, a class of Holders of such claims may vote to accept different treatment.

3.    Classes of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under section 507(a) of the Bankruptcy Code.

4.    Class of Equity Interest Holders

Holders of Equity Interests are parties who hold an ownership interest in the Debtor (*i.e.*, the Debtor's owners). For example, in a corporation or a limited liability company, entities or individuals holding stock or membership interests would be considered to be Holders of Equity Interests.

**C.    Overview - Treatment of Claims and Interests under Plan**

Classified claims and interests are treated as follows under the Pan:

| Class | Impairment | Treatment |
| --- | --- | --- |
| Class 1: Priority Claims – §507(a)(4) | Unimpaired – Not Entitled to Vote | All Allowed claims entitled to priority under §507(a)(4) of the Bankruptcy Code shall be paid in full, in cash, upon the later of the Effective Date of the Pan, or the date on which such claim is Allowed by a final non-appealable order.  To the extent that the allowed amount of any Class 1 Claim exceeds the priority limitation of § 507(a)(4) of the Bankruptcy Code, the holder of such a claim shall have an Allowed Class 6 Claim to the extent of the excess. |

| Class 2: Priority Claims – §507(a)(6) | Unimpaired – Not Entitled to Vote | All Allowed Claims entitled to priority under §507(a)(6) of the Bankruptcy Code shall be paid in full, in cash, upon the later of the Effective Date of the Pan or the date on which such claim is Allowed by a final non-appealable order, up to and including a maximum of $6,150.00 per Claim. To the extent that a Class 2 Claimant has an Allowed Claim in excess of $6,150.00, the excess will automatically be treated as a claim under Class 6. |
|---|---|---|
| Class 3: Secured Claim of ReadyCap Lending, LLC | Impaired – Entitled to Vote | As soon as reasonably practicable after the earlier of the Effective Date or Allowance, the ReadyCap Lending, LLC (or the then-Holder of its claim) shall receive, in the discretion of the Creditor Trustee, either: (i) the Collateral securing its Allowed Secured Claim; (ii) Cash in an amount equal to the value of the Collateral securing its Allowed Claim; (iii) all Distributable Proceeds until the earlier of payment in full of its Allowed Claim or the Distribution by the Creditor Trust of all Distributable Proceeds; or (iv) such other treatment as may be agreed to between the Holder and the Creditor Trustee. |
| Class 4: Secured Claim of Harris Bank | Impaired Entitled to Vote | As soon as reasonably practicable after the earlier of the Effective Date or Allowance, and after payment of Class 3 Claims in full, Harris Bank (or the then-Holder of its claim) shall receive, in the discretion of the Creditor Trustee, either: (i) the Collateral securing its Allowed Secured Claim; (ii) Cash in an amount equal to the value of the Collateral securing its Allowed Claim; (iii) all Distributable Proceeds until the earlier of payment in full of Harris's Allowed Claim or the Distribution by the Creditor Trust of all Distributable Proceeds; or (iv) such other treatment as may be agreed to between the Holder and the Creditor Trustee. |

| Class 5: Secured Claim of Keystone Equipment Finance Corp. | Impaired Entitled to Vote | As soon as reasonably practicable after the earlier of the Effective Date or Allowance, Keystone Equipment Finance Corp. (or the then-Holder of its claim) shall receive, in the discretion of the Creditor Trustee, either: (i) the Collateral securing its Allowed Secured Claim; (ii) Cash in an amount equal to the value of the Collateral securing its Allowed Claim; (iii) all Distributable Proceeds until the earlier of payment in full of Keystone's Allowed Claim or the Distribution by the Creditor Trust of all Distributable Proceeds; or (iv) such other treatment as may be agreed to between the Holder and the Creditor Trustee. |
|---|---|---|
| Class 6 – General Unsecured Claims | Impaired Entitled to Vote | Except to the extent that a Holder of an Allowed Claim in Class 6 agrees to a less favorable treatment, each such Holder shall be paid its Pro Rata share of the Distributable Proceeds after Holders of Allowed Claims in Classes 1 through 5 have been satisfied pursuant to the terms of the Plan. |
| Class 7: Insider Unsecured Claims | Impaired Entitled to Vote | Except to the extent that a Holder of an Allowed Insider Claim in Class 7 agrees to a less favorable treatment, each such Holder shall be paid its Pro Rata share of Proceeds after Holders of Allowed Claims in Classes 1 through 6 have been satisfied pursuant to the terms of the Plan. |
| Class 8 – Equity Interests | Deemed to Reject – Not Entitled to Vote | All equity interests will be canceled on the Effective Date, and the Debtor will take reasonable steps to dissolve the Debtor in accordance with state law. |

### D.    Treatment of Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code.  Accordingly, the Plan Proponents have not placed the following claims in any class:

1.    Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under section 507(a)(2) of the Bankruptcy Code.  The Bankruptcy Code requires that each Administrative expense claim be paid on the Effective Date of the Plan, unless the holder of the claim agrees to a different treatment. As reflected below, each holder of an

administrative expense claim allowed under section 303 of the Bankruptcy Code will be paid in full on the Effective Date of the Pan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

The following chart lists the Debtor's estimated administrative expenses and their treatment under the Pan (estimated as of a projected confirmation date of _____, 2015):

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Unpaid Expenses Arising in the Ordinary Course of Business After the Petition Date | $[_____] | Paid in full on the Effective Date of the Plan, or according to terms of obligation, if later |
| Claims Asserted for the Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $[_____] | Paid in full on the Effective Date of the Plan, or according to terms of obligation, if later |
| Professional Fees, as approved by the Court | $[_____] | Paid in full on the Effective Date of the Plan, or according to separate written agreement, or according to court order, if such fees have not been approved by the Court on the Effective Date of the Plan |
| Clerk's Office Fees | $0 | Paid in full on the Effective Date of the Plan |
| Other Administrative Expenses | $0 | Paid in full on the Effective Date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $[_____] | Paid in full on the Effective Date of the Plan |

2.    Priority Tax Claims

On, or as soon as reasonably practicable after, the latest of the Effective Date or the date such Priority Tax Claims becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (i) Cash equal to the unpaid portion of such Allowed Priority Tax Claim or (ii) such other treatment as to which the Debtor (prior to the Effective Date) or Creditor Trustee (on and after the Effective Date) and such Holder have

agreed upon.

### E.    Treatment of U.S. Trustee Fees

All fees required to be paid by 28 U.S.C. § 1930(a)(6) ("*U.S. Trustee Fees*") will accrue and be timely paid until entry of a final decree and the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.  Any U.S. Trustee Fees owed on or before the Effective Date of the Pan will be paid on the Effective Date.

### F.    Claims

Pursuant to section 1111(a) of the Bankruptcy Code, a proof of claim is deemed filed under section 501 of the Bankruptcy Code for any claim that appears in the Debtor's schedules, except for claims that the Debtor specifically scheduled as disputed, contingent and unliquidated. In the case where the Debtor duly scheduled claims as either disputed, contingent and/or unliquidated, and no proof of claim was timely filed by such Claim Holder, such scheduled debt shall not be deemed a claim, and shall not participate in the Pan or receive any distributions under the Pan.

## IV.    ALLOWANCE AND DISALLOWANCE OF CLAIMS

### A.    Disputed Claims

A Disputed Claim is a Claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or liquidated.

Notwithstanding any provision in the Plan to the contrary, the Debtor or Creditor Trust shall only make Distributions on account of Allowed Claims and Allowed Equity Interests.  A Claim that is Disputed by the Debtor as to its amount only shall be deemed Allowed in the amount the Debtor acknowledges is legitimate and the remainder shall be considered a Disputed Claim.   No distribution will be made on account of a Disputed Claim unless such Claim is allowed by a final non-appealable order.  After the Effective Date, the Creditor Trustee shall object (and shall take over, and continue prosecuting, any outstanding claims objections initiated by the Debtor) to the allowance of any Disputed Claims as the Creditor Trustee determines is reasonable.

### B.    Settlement of Disputed Claims

The Creditor Trustee will have the power and authority to settle and compromise a Disputed Claim.  No Bankruptcy Court approval shall be required in order for the Creditor Trustee to settle and/or compromise any Claim, objection to Claim, Cause of Action, or right to payment of or against the Debtor or its Estate.

### C.    Alternative Treatment

Notwithstanding any provision in the Plan to the contrary, any Holder of an Allowed Claim may receive, instead of the Distribution or treatment to which it is entitled under the Plan, any other Distribution or treatment to which it and the Debtor (prior to the Effective Date) and the Creditor

15

Trustee (on and after the Effective Date) may agree to in writing; provided, however, that such other Distribution or treatment shall not provide a return having a present value in excess of the present value of the Distribution or treatment that otherwise would be given such Holder pursuant to the Plan.

### D.   Postpetition Interest

In accordance with section 502(b)(2) of the Bankruptcy Code, the amount of all prepetition Unsecured Claims against the Debtor shall be calculated as of the Petition Date. Except as otherwise explicitly provided in the Plan, in section 506(b) of the Bankruptcy Code, or by Final Order, no Holder of a prepetition Claim shall be entitled to or receive interest or fees relating to such Claim.

## V.   MEANS OF IMPLEMENTING THE PLAN

### A.   Creation of Creditor Trust

The Creditor Trust shall be established pursuant as of the Effective Date for the benefit of all creditors of the Estate holding Allowed Claims and shall be governed by the Creditor Trust Agreement.

Russ Long, of O'Keefe, shall be designated as Creditor Trustee.  The Creditor Trustee will owe a fiduciary duty, consistent with the duties of trustees under Iowa law, to beneficiaries of the Creditor Trust.

The Creditor Trustee shall administer the Creditor Trust Assets pursuant to the Plan and the Creditor Trust Agreement from and after the Effective Date and shall have the powers set forth in the Creditor Trust Agreement, which powers, subject to the rights of the Oversight Committee, shall include the right to operate, sell or dispose the Creditor Trust Assets, the right to object to or continue objecting to Claims, pursue Causes of Action and such other powers as are customary for a trustee of a creditor trust of this nature.

### B.   Vesting of Assets in the Creditor Trust

On the Effective Date of the Plan, the Creditor Trust Assets (defined broadly in the Plan to encompass all of the Debtor's tangible and intangible assets) shall be transferred to and vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan.  For the removal of all doubt, anything that may have been deemed property of the Debtor or its Estate shall as of the Effective Date shall become and be forever deemed property of the Creditor Trust.  The entry of the Confirmation Order shall be deemed to authorize and direct the Debtor to take such steps as may be necessary or appropriate to effectuate such transfer and contribution of its property to the Creditor Trust, subject to oversight from the Committee or the Creditor Trustee, as applicable.

In the event that the Real Estate Assets are not sold prior to the Effective Date pursuant to the Winterquist Transaction or any other Sale Transaction, such assets shall remain in the name of the Debtor until they are sold.  The Creditor Trust shall pay the Debtor nominal rent in the

amount of $1 per month between the Effective Date and the date of the closing of a transaction involving the Real Estate Assets.  The Proceeds from the sale of the Real Estate Assets shall be immediately deposited into the Creditor Trust.  Notwithstanding that legal ownership of the Real Estate Assets will remain with the Debtor, after the Effective Date, the Creditor Trustee will have the sole right to market and agree to sell the Real Estate Assets on behalf of the Debtor.

### C.    Sales of Assets

The Debtor intends on selling its assets to Winterquist in the Winterquist Transaction.
Prior to the Effective Date, the Debtor shall have the right to sell, with Committee consents, some or substantially all of its assets and seek Bankruptcy Court approval of such a transaction, to a different entity in the event that the Winterquist Transaction is terminated for any reason. If a sale is consummated prior to the Effective Date, the Proceeds shall be transferred to the Creditor Trust and distributed pursuant to the terms of the Creditor Trust Agreement.  For the sake of clarity, nothing in the Pan or otherwise is intended to preclude a bid by a group associated with existing ownership or management, so long as the Committee and Debtor determine that the bid in question represents the highest and best value for the assets at issue.

If no "going concern" sale has occurred by the Effective Date, the Creditor Trustee, in its discretion, may continue to operate the Debtor's business in an effort to maximize value through a going concern sale for up to 120 days, or longer with Court approval (which shall be granted for cause shown) and shall have the right to sell some or all of the business assets without Bankruptcy Court approval (but subject to Oversight Committee approval) provided that any sale of seed must be made pursuant to the Debtor's contacts with its licensors.  Alternatively, the Creditor Trustee, in its discretion, may decide that ceasing operations and liquidating individual assets (or taking an intermediate approach) best maximizes value under the circumstances.

The Confirmation Order shall include provisions making clear that any property sold hereunder (including sales of Creditor Trust Assets by the Creditor Trust on and after the Effective Date) shall be sold free and clear of claims, liens, and encumbrances, to the greatest extent permitted by the Bankruptcy Code.  However, the Bankruptcy Court will retain jurisdiction and the case will remain open, and to the extent potential purchasers seek orders approving sales of assets, the Creditor Trustee may, but shall not be required to, seek entry of Bankruptcy Court order approving specific transactions.

### D.    Dissolution of Debtor

When the Creditor Trustee determines as necessary or appropriate under the circumstances (including with respect to the pursuit of causes of action in the name of the Estate), the Debtor shall be dissolved without any further action by the stockholders, officers, or directors of the Debtor.  The Creditor Trustee may, in his or her discretion, file all necessary certificates of dissolution and take any other actions necessary or appropriate to reflect the dissolution of the Debtor under Iowa state law, where the Debtor is incorporated. All applicable regulatory or governmental agencies shall accept any certificates of dissolution or other papers filed by the Creditor Trustee on behalf of the Debtor and shall take all steps necessary to allow and reflect the prompt dissolution of the Debtor as provided in the Plan, without the payment of any fee,

tax, or charge and without need for the filing of reports or certificates, except as the Creditor Trustee may determine in his or her sole discretion. The Court may issue one or more Orders noting the Effective Date as evidence of the dissolution of the Debtor.

### E.    Oversight Committee

The Oversight Committee will be deemed formed on the Effective Date.  The Oversight Committee shall have the right to approve the sale of any Creditor Trust Assets in a transaction (an "*Approval Transaction*") in which the value of such assets (individually or in the aggregate), or the resolution of any Claim to the extent the face or scheduled amount of such Claim exceeds, or reasonably could have been expected to exceed, $100,000.00.

The Creditor Trustee shall provide the Oversight Committee with reasonable written notice (not less than seven days unless circumstances render such notice impracticable, in which case the Creditor Trustee will alert the members of the Oversight Committee in his correspondence of such shorter period for a response) of any Approval Transaction.  The Creditor Trustee may provide notice by electronic mail to the members of the Oversight Committee and their representatives (if designated).  In no event shall the Oversight Committee have less than two Business Days' notice to approve a transaction

The Creditor Trustee will be authorized to proceed with an Approval Transaction, unless a majority of the members of the Oversight Committee provide written notice (including by electronic mail to the Creditor Trustee) of an objection to a particular transaction prior to the expiration of the notice period.  If a majority of the members of the Oversight Committee provide written notice of their disapproval during the notice period, the Creditor Trustee may either: (a) alter or amend the terms of Approval Transaction until it is approved by a majority of the members of the Oversight Committee; (b) choose not proceed with Approval Transaction. No member of the Oversight Committee shall be entitled to compensation or expense reimbursement.

### F.    Corporate Action

Upon entry of the Confirmation Order, the Debtor or the Creditor Trustee is also authorized, without the need for any or further order of the Bankruptcy Court, to take any and all actions reasonably necessary to effectuate the Plan.  The Creditor Trustee, upon the Effective Date, may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, auctioneers, brokers, or other professionals as he or she may deem necessary, in his sole discretion, in accordance with the terms of the Creditor Trust Agreement.  The professionals retained by the Creditor Trustee are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in the Chapter 11 Case and the Creditor Trustee shall be permitted to retain any such professional in light of the efficiencies implicit in continuity.

On the Effective Date, the authority, power and incumbency of the persons then acting as directors of the Debtor shall be terminated and such directors shall be deemed to have resigned. The employment by the Debtor of each officer and all employees in the employment of the Debtor as of the Effective Date shall automatically on the Effective Date cease to be officers and

employees of the Debtor. To the extent the Creditor Trust hires any prior employees of the Debtor, neither the Creditor Trustee nor the Creditor Trust shall be deemed a successor to the Debtor. Notwithstanding the foregoing, if the Winterquist Transaction (or any other Sale Transaction involving the Real Estate Assets) has not closed prior to the Effective Date, _____ shall be an officer of the Debtor after the Effective Date with the power, upon the direction of the Creditor Trustee, to execute any documents related to a sale of the Real Estate Assets and perform any other services requested by the Creditor Trustee.

Upon the Effective Date of the Plan, the Creditor Trustee succeeds to such powers as would have been applicable to the Debtor's officers, directors and shareholders. The Court may issue one or more Orders noting the Effective Date as evidence of the termination of all of the Debtor's employees.

### G.    Sale Free and Clear

The Confirmation Order shall include provisions making clear that any property sold pursuant to the Plan (including sales of Creditor Trust Assets by the Creditor Trust on and after the Effective Date) shall be sold free and clear of claims, liens, and encumbrances, to the greatest extent permitted by the Bankruptcy Code.  However, the Bankruptcy Court will retain jurisdiction and the case will remain open, and to the extent potential purchasers seek orders approving sales of assets, the Creditor Trustee may, but shall not be required to, seek entry of Court order approving specific transactions (or if the Creditor Trustee is required to seek approval due to disapproval of a proposed transaction by the Oversight Committee).

### H.    Effective Date Transactions

The Effective Date shall occur, upon (a) the Debtor completing all transactions and executing all documents required to occur on the Effective Date hereunder and (b) the Debtor, within three business days of entry of the Confirmation Order, filing a Notice of Effective Date, which shall be provided to all Creditors via U.S. Mail and filed on the Court's CM/ECF docket.

The foregoing notwithstanding, the Debtor, in its sole discretion, may extend the Effective Date by 30 days after the date the Confirmation Order is entered on the docket to facilitate the closing of a sale of substantially all of its assets.  Upon obtaining the consent of the Committee, the Debtor may seek a further extension of the Effective Date.

### I.    Preservation of Rights of Action; Settlement of Claims and Releases

As described in greater detail in Article VI of the Plan, except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, the Creditor Trustee shall retain and may pursue and/or enforce (and shall have the sole right to pursue and/or enforce) any claims, demands, rights, and Causes of Action that the Debtor or Estate may hold against any Entity.  The Creditor Trustee or his successor may pursue, or not pursue, such retained claims, demands, rights, or Causes of Action, as he deems appropriate in his own discretion.

**J.      Treatment of Executory Contracts and Unexpired Leases**

1.      Schedule of Executory Contracts and Unexpired Leases

The Schedule of Executory Contracts and Unexpired Leases attached as <u>Exhibit B</u> to the Plan contains a list of all of the contracts and leases that the Debtor believes can be potentially assumed (or assumed and assigned) or rejected by the Debtor (prior to the Effective Date) and/or the Creditor Trust (after the Effective Date).  The amount that the Debtor believes is needed to cure defaults, if any, with respect to each of the contracts and leases is also included in the Schedule of Executory Contracts and Unexpired Leases (for each contract or lease, along with any unpaid amounts arising after the date of the Schedule, the "*Cure Amount*").

Nothing in the Plan, including listing a contract or lease on the Schedule of Executory Contracts and Unexpired Leases, shall constitute an admission by the Debtor that any contract or lease is an executory contract or unexpired lease or that the Debtor has any liability thereunder.

2.      Presumed Rejection

Any executory contracts or unexpired leases contained in the Schedule of Executory Contracts and Unexpired Leases which have not (i) expired by their own terms on or prior to the Effective Date, or (ii) been assumed, assumed and assigned, or rejected with the approval of the Bankruptcy Court (including as provided for hereunder), shall be deemed rejected by the Creditor Trust on the earlier of (a) the Creditor Trust filing a notice or notices on the docket, and serving the notice(s) upon the effected parties, designating particular contracts or leases for rejection or (b) the date that is one hundred and twenty (120) days after the Effective Date (which period may be extended by the Court upon motion and cause shown).  The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of such executory contracts and unexpired leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code as provided for above.

All executory contracts or unexpired leases which are not listed in the Schedule of Executory Contracts and Unexpired Leases shall be deemed rejected by the Debtor as of the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of such executory contracts and unexpired leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

3.      Rejection Damages Claims

Except as otherwise provided in a Final Order approving the rejection of an executory contract or unexpired lease, Claims arising out of the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Rejection Claims Bar Date. Any Claims not Filed by the Rejection Claims Bar Date will be forever barred from receiving a distribution from the Debtor and the Creditor Trust.

The Creditor Trust reserves the right to object to, settle, compromise or otherwise resolve any Claim filed on account of a rejected executory contract or unexpired lease in the same manner as discussed hereunder for other Claims.

### 4.     Possible Assumption and Assignment

The Debtor (prior to the Effective Date) and the Creditor Trust (after the Effective Date) has the option of  assuming some or all of the contracts and leases listed in the Schedule of Executory Contracts and Unexpired Leases, and will be authorized to do so by (a) filing a notice with the Court designating some or all of the contracts and leases for assumption and serving it on the effected party or parties and (b) transmitting payment of the Cure Amount(s) associated within the contract(s) or leases(es) so designated, in cash, within seven (7) days of the filing of the notice (unless otherwise agreed by the Creditor Trustee and the counterparty).  The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumption by the Debtor, as of the date the notice is filed, of the executory contracts and unexpired leases so designated.

After the Effective Date, as long as the Creditor Trustee satisfies the notice and Cure Amount requirements set forth above, all contract and lease counterparties shall be forever barred and estopped from asserting or claiming against the Debtor or Creditor Trust or any successor parties that any additional amounts are due or other defaults exist, that other conditions to assumption must be satisfied under such executory contracts or unexpired leases or that there is any objection or defense to assumption of such executory contracts or unexpired leases.

Any provision in any executory contract or unexpired lease to be assumed under the Plan that purports to declare a breach, default, or right to payment or modification as a result of an assignment or change of control in respect of the Debtor or Creditor Trust, or any transfer of assets by the Debtor or Creditor Trust, is unenforceable, and all executory contracts and unexpired leases to be assumed as provided for herein shall remain in full force and effect, subject only to payment of the appropriate Cure Amount, if any.  No sections or provisions of any executory contract or unexpired lease that purport to provide for additional payments, penalties, charges, rent acceleration or other financial accommodations in favor of the non-Debtor third party thereto shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and are otherwise unenforceable under section 365(e) of the Bankruptcy Code and/or applicable case law.

In order to assign a particular contract or lease as part of a sale transaction, the Debtor (prior to the Effective Date) and the Creditor Trust (after the Effective Date) shall file a motion with the Court seeking such assignment, and shall have the right to condition assumption on approval of the proposed assignment (for example by attaching a proposed assumption notice to the motion, to be filed along with the order to the extent the proposed assignment is approved). Counterparties shall have the ability to contest adequate assurance of future performance.

### 5.     Cure Amounts

Any counterparty that objects to the Cure Amounts contained in the Schedule of Executory Contracts shall, if the dispute cannot be resolved consensually, file an objection to the Cure

Amount prior to Confirmation. The Confirmation Order will set forth and establish all of the Cure Amounts for which either no objection is received or the objections has been resolved or ruled upon prior to Confirmation. If an objection cannot be resolved prior to Confirmation, the Cure Amount for the contract(s) or lease(s) at issue shall not be established and included in the Confirmation Order, and will instead be established by separate order (or agreement) post-Confirmation.

### K.      Final Decree – Closing the Bankruptcy Case

Once the estate has been fully administered (i.e., the Creditor Trust Assets have been monetized, distributions have been made, and it is not economical to take further actions), as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Creditor Trustee, or such other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such final decree on its own motion.

## VI.    PROVISIONS GOVERNING PLAN DISTRIBUTIONS

### A.      Timing and Effective Date of Distributions

The Creditor Trustee shall use its reasonable best efforts to complete distributions under the Plan within six months of the Effective Date. Distributions made to Holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

### B.      Method of Distributions to Holders of Claims

Distributions made pursuant to the Plan, shall be in U.S. dollars and, at the option and in the sole discretion of the Creditor Trustee, be made by (a) checks drawn on or (b) wire transfers from a domestic bank selected by the Creditor Trustee.

### C.      Delivery of Distribution

Subject to the provisions of Rule 2002(g) of the Bankruptcy Rules, and except as otherwise provided herein, distributions and deliveries to Holders of Allowed Claims shall be made at the address (the "*Distribution Address*") of each such Holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by the address set forth on timely filed proof(s) of claim or a Notice of Change of Address filed with the Bankruptcy Court and served on the Debtor or Creditor Trustee.

### D.      Tax Identification Numbers and OFAC Certifications

Notwithstanding anything in the Plan to the contrary, prior to making Distributions hereunder, the Creditor Trustee shall require all Holders to furnish to him: (a) its Employer or Taxpayer Identification Number as assigned by the Internal Revenue Service on a From W-9 and (b) a certification that the Holder is not a person or entity with whom it is illegal for a U.S. person to do business under Office of Foreign Assets Control ("OFAC") sanctions regulations and/or the list of Specially Designated Nationals and Blocked Persons (collectively, the "*Pre-Distribution*

*Certifications*"). Pre-Distribution Certification forms will be mailed to the Distribution Address for each Holder prior to Distributions being made, and Holders shall have forty five (45) days from the date of mailing to return the executed Pre-Distribution Certifications. Any Holder that fails to return the executed Pre-Distribution Certifications within such forty five (45) day period shall be deemed to have forfeited its right to receive Distributions and shall be forever barred and enjoined from asserting any right to Distributions made prior to the Creditor Trustee receiving its executed Pre-Distribution Certifications (such a Holder would only be entitled to a Pro-Rata Share of remaining future Distributions, if any). Any Distributions that are forfeited pursuant to this provision will be returned to the Creditor Trustee and become property of the Estate.

### E.   Undeliverable Distributions

#### 1.   Holding of Undeliverable Distributions

If any Distribution to any Holder of an Allowed Claim is returned to the Creditor Trustee as undeliverable, no further Distributions shall be made to such Holder unless and until the Creditor Trustee is notified by such Holder, in writing, of such Holder's then-current address. Upon such an occurrence, the appropriate Distribution shall be made as soon as reasonably practicable after such Distribution has become deliverable. All Entities ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Debtor or the Creditor Trustee to attempt to locate any Holder of an Allowed Claim.

#### 2.   Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim entitled to an undeliverable or unclaimed Distribution that does not provide notice of such Holder's correct address to the Creditor Trustee within ninety (90) days after the date of the initial Distribution made by the Creditor Trustee to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution against the Creditor Trustee. If, after ninety days, Distributions remain unclaimed, unclaimed Distributions will become Forfeited Distributions and such amounts shall become the property of the Estate.

### F.   Setoffs

Consistent with applicable law, the Creditor Trustee may, but shall not be required to, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtor, its Estate, or the Creditor Trustee may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a set off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor, its Estate, or the Creditor Trustee of any such claims, rights, and Causes of Action that the Debtor, its Estate, the Creditor Trust, or the Creditor Trustee may possess against such Holder.

### G.   Allocation of Payments

Amounts disbursed to Holders of Claims in satisfaction thereof shall be allocated first to the

principal amounts of such Claims, with any excess being allocated to interest that has accrued on such Claims but remains unpaid.

### H.     Postpetition Interest

Except as otherwise provided herein or as required by applicable bankruptcy law, Postpetition Interest shall not be disbursed on account of any Claim.

### I.     Settlement of Claims and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Pan shall constitute a good faith compromise of all Claims or controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim with respect thereto, or any distribution to be made on account of such an Allowed Claim.   The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies, and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and is fair, equitable and reasonable.

## VII.     PROVISIONS GOVERNING TREATMENT OF CLAIMS

### A.     Procedures for Resolving Disputed Claims

#### 1.     Prosecution of Objection to Claims

After the Effective Date, the Creditor Trustee shall object (and shall take over, and continue prosecuting, any outstanding claims objections initiated by the Debtor) to the allowance of any Disputed Claims as the Creditor Trustee determines is reasonable.   All objections shall be pursued to settlement or to Final Order; provided, however, that no Bankruptcy Court approval shall be required in order for the Creditor Trustee to settle and/or compromise any Claim, objection to Claim, Cause of Action, or right to payment of or against the Debtor or its Estate.

Any objections to Claims shall be resolved or litigated by the Creditor Trustee, in his sole discretion,  subject to the approval of the Oversight Committee with respect to the resolution of a Disputed Claim with a face or scheduled amount in excess of $100,000.   The Creditor Trustee shall have sole and complete discretion to not review and/or object to proofs of Claim, including, without limitation, to not object to claims below a certain dollar amount to the extent the Creditor Trustee believes that such review and/or objection would be uneconomical.

#### 2.     Time for Objecting to Claims

The Creditor Trustee will use reasonable best efforts to file objections to all Claims he intends to dispute one-hundred twenty (120) days of the Effective Date.   However, this period can be extended or enlarged by the Court on motion of the Creditor Trustee at any time.

3.      Treatment of Disputed Claims

No interest shall be paid on Disputed Claims that later become Allowed Claims or with respect to any distribution to such Holder.  No distribution shall be made with respect to all or any portion of any Claim, a portion of which or all of which is a Disputed Claim, pending the entire resolution thereof.  As described in the Plan, Claims can also be estimated for voting purposes.

## B.      Enforcement of Bar Date Order

In accordance with section 502(b)(9) of the Bankruptcy Code, any Entity that failed to File a proof of Claim by the applicable Bar Date and was not otherwise permitted to File a proof of Claim after the applicable Bar Date by a Final Order of the Bankruptcy Court is and shall be barred, estopped and enjoined from asserting any Claim against the Debtor (i) in an amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such Entity as undisputed, noncontingent, and liquidated; or (ii) of a different nature or a different classification than any Claim identified in the Schedules on behalf of such Entity. All Claims Filed after the applicable Bar Date and for which no Final Order has been entered by the Bankruptcy Court determining that such Claims were timely Filed shall be disallowed and expunged. Any Distribution on account of such Claims shall be limited to the amount, if any, listed in the applicable Schedules as undisputed, noncontingent, and liquidated.

## VIII.   CONFIRMATION REQUIREMENTS AND PROCEDURES

### A.      Overview of Requirements

To be confirmable, the Plan must meet the requirements listed in sections 1129(a) or (b) of the Bankruptcy Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each Holder of a Claim or Equity Interest at least as much as the Holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in section 1129 of the Bankruptcy Code, and they are not the only requirements for confirmation.

### B.      Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A Holder of a Claim or Equity Interest has a right to vote for or against the Plan only if that Holder has a Claim or Equity Interest that is: (1) contemplated to receive property under the Plan (so is not deemed to reject); (2) Allowed or Allowed for voting purposes; and (3) Impaired.

### C.      What Is an Allowed Claim or an Allowed Equity Interest?

Only a Holder of a Claim or Equity Interest that constitutes an Allowed Claim or an Allowed Equity Interest has the right to vote on the Plan.  Generally, a Claim or Equity Interest is

Allowed if either (l) the Debtor has scheduled the Claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the Creditor has filed a proof of Claim or Equity Interest, unless an objection has been filed to such proof of Claim or Equity Interest (or to a scheduled Claim or Equity Interest).  When a Claim or Equity Interest is not allowed, the Creditor or Equity interest holder holding the Claim or Equity Interest cannot vote unless the Court overrules the objection or Allows the Claim or Equity Interest for voting purposes under Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The Bar Date – *i.e.*, the deadline for filing a proof of claim in the Chapter 11 Case – was April 28, 2015.  The deadline for filing objections to claims is one hundred twenty days after the Effective Date, and the deadline for filing responsive objections thereto is twenty-one days after the Objection has been filed.  The Creditor Trustee may seek an extension of the deadline for filing objections.

### D.    What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the Holder of an Allowed Claim or Equity Interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in section 1124 of the Bankruptcy Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### E.    Who Is Not Entitled to Vote?

The following types of Creditors and equity interest holders are not entitled to vote:

1. Holders of Claims and Equity Interests that have been disallowed by Court order.
2. Holders of other Claims or Equity Interests that are not "Allowed Claims" or "Allowed Equity Interests" (as discussed above), unless they have been "Allowed" for voting purposes.
3. Holders of Claims in unimpaired classes.
5. Holders of Equity Interests, since they do not receive or retain any value under the Plan.
6. Holders of Priority Tax Claims.
7. Holders of Administrative Expense Claims.

Even if you are not entitled to vote on the plan, you still have a right to object to Confirmation of the Plan.

### F.    Who Can Vote in More Than One Class?

A Holder of a Claim that has been allowed in part in one Class and in part in another Class or a Holder of a Claim who otherwise hold Claims in multiple Classes, is entitled to accept or reject the Plan in each capacity, and should cast one ballot for each Class in which it has a Claim.

### G.    Votes Necessary to Confirm the Plan

Since impaired classes exist under the Pan, the Court cannot confirm the Plan unless (1) at least one impaired Class of creditors has accepted the Plan without counting the votes of any insiders

within that Class and (2) all impaired Classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed below in section G.2.

           1.       Votes Necessary for a Class to Accept the Plan

A Class of Claims accepts the Plan if both of the following occur: (1) the Holders of more than one-half of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan, and (2) the Holders of at least two-thirds in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan.

No Class of Equity Interests is voting in connection with the Plan.

           2.       Treatment of Nonaccepting Classes

Even if one or more impaired Classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting Classes are treated in the manner prescribed by section1129(b) of the Bankruptcy Code. A Plan that binds nonaccepting Classes is commonly referred to as a "cram down" plan. The Bankruptcy Code allows the Plan to bind nonaccepting Classes of Claims or Equity Interests if it meets all the requirements for consensual confirmation except the voting requirements of section 1129(a)(8) of the Bankruptcy Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired Class that has not voted to accept the Plan.

You should consult your own attorney if a "cramdown" confirmation will affect your Claims or Equity Interests, as the variations on this general rule are numerous and complex.

    **H.**      **Feasibility of the Plan**

In connection with confirmation of the Plan, the Bankruptcy Court will have to determine that the Plan is feasible pursuant to section 1129(a)(11) of the Bankruptcy Code, which requires that the confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, unless such liquidation or reorganization is contemplated in the Pan. Here, the Plan contemplates a sale of the assets, with the Creditor Trustee either operating the business for a limited period to accomplish a "going concern" sale or liquidating the Debtor's assets in another manner. As the Plan contemplates a sale, the Debtor and Committee believe that it is almost certainly feasible.

If a Sale Transaction occurs, the Debtor will have liquidated substantially all of its assets. Proceeds generated from the sale or sales will be distributed in accordance with the priority scheme detailed above, net expenses for the Creditor Trustee and any required professionals. For this reason, the Debtor has not provided the detailed financial information required pursuant to Local Rule 3016-1(2).

    **I.**      **Best Interests Test**

Notwithstanding acceptance of the Plan by each impaired Class, to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each holder of a Claim or Equity Interest in any such impaired Class who has not voted to accept the Plan. If an

impaired Class does not accept the Plan, the 'best interests' test requires that the Bankruptcy Court find that the Plan provides to each member of such impaired Class a recovery on account of the member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such member would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

Classes 3-8 are Impaired under the Plan. To estimate what members of the Impaired Classes would receive if the Debtor's assets were liquidated under chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first estimate how much cash would be available if the Chapter 11 Case were converted to a chapter 7 case under the Bankruptcy Code and the Debtor's assets were liquidated by a chapter 7 trustee (the "*Liquidation Value*"). The Liquidation Value of the Debtor would consist of the net proceeds received from the disposition of the Debtor's assets plus any cash held by the Debtor.

The information contained in Exhibit II hereto provides a summary of the Liquidation Value of the Debtor's interests in property, assuming a chapter 7 liquidation in which any trustee appointed by the Bankruptcy Court would liquidate the Debtor's properties and interests. The Liquidation Value was prepared solely for use in this Disclosure Statement and does not represent values that are appropriate for any other purpose. Nothing in this analysis will be intended to or constitute a concession by or admission of the Debtor for any purpose.

The Debtor believes that a chapter 7 liquidation of the Debtor's Estate would result in diminution in the value to be realized by holders of Claims, as compared to the proposed distributions under the Plan. For one thing, under the Plan creditor recoveries will not be diluted by the payment of statutory fees to a chapter 7 trustee (the only costs will be the Creditor Trust Expenses). Moreover, by selling the assets under the Plan and in a chapter 11 bankruptcy, the Creditor Trustee is granted the flexibility to operate the business as needed to maximize value (which could lead to a better outcome). And finally, no matter how the assets end up being sold, the Plan does so most efficiently since under the Plan an experienced professional who has been involved in the case – the Creditor Trustee – is immediately appointed and charged with maximizing sales prices (as opposed to a random trustee being appointed, who would then in all likelihood have to retain a professional to assist him (adding unneeded cost and delay).

## IX.  EFFECT OF CONFIRMATION OF PLAN

### A.  Discharge

The Debtor will not receive a discharge under the Plan in accordance with section 1141 of the Bankruptcy Code.

### B.  Binding Effect

The provisions of the Plan, the Confirmation Order, and any associated findings of fact or conclusions of law shall bind the Debtor, any entity acquiring property under the Plan, and any Creditor of the Debtor, whether or not the Claim of such Creditor is Impaired under the Plan and whether or not such Creditor has accepted the Plan.

### C.      Vesting of Property

Upon the occurrence of the Effective Date subsequent to Confirmation of the Plan all of the Creditor Trust Assets – defined broadly in the Plan to include all of the Debtor's tangible and intangible property – vests in the Creditor Trust.

### D.      Releases

#### 1.      Releases by Debtor

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, and as a debtor in possession, shall forever release, waive, and discharge all claims, obligations, suits, judgments, demands, debts, rights, Causes of Action, and liabilities, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to (i) the parties released pursuant to the Releases; (ii) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan; (iii) the solicitation of acceptances and rejections of the Plan; (iv) the solicitation of the Releases; (v) the Chapter 11 Case; (vi) the property to be distributed under the Plan; or (viii) any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Case, against (a) the Debtor's Professionals; (b) the Committee's Professionals; (c) each member of the Committee in its capacity as such;  (d) the current and former members, managers, Holders of Equity Interests, and employees of the Debtor; and (e) the Creditor Trustee.**

It is important to be aware that the Debtor Releases impact Holders of Claims in the sense that if the Debtor gives up the right to assert claims, the waiver could reduce the proceeds available for distribution by the Creditor Trust.  Importantly, however, the Debtor and the Committee are not currently aware of any meritorious or valuable claims that could be asserted by the Debtor against the foregoing parties, other than potentially "preference" claims that could be asserted against two of the Committee members.  With respect to the potential Committee member preference claims, however: (a) the aggregate amount received by Committee members in the 90 days before the Petition Date (the maximum amount that could potentially be recouped) was $69,075.00; (b) as of the Petition Date, these same parties were owed, according to the Debtor's schedules, $448,267.78 (*i.e.*, if pursued, the Debtor would be seeking to recoup funds from two of the parties most harmed by the Debtor's bankruptcy filing); (c) the Committee members may have meritorious defenses to any preference claim (for example, that the payments were made in the ordinary course of business between the parties); (d) to attempt to recover the $69,075.00, the Creditor Trust would need to pursue two lawsuits, the expenses of which would offset any recovery; (e) unless waived, any amount recouped would give rise to a Claims against the Debtor in the same amount; and (f) the Committee members all have spent substantial time serving on the Committee – with no compensation – in order to maximize recoveries for all Unsecured Creditors.  Moreover, as discussed herein and in the Plan and Creditor Trust Agreement, the Committee members will continue to provide oversight of the Creditor Trustee post-Effective Date (again, with no compensation).  Thus, the Debtor and Committee agree that the foregoing

Releases, including of the Committee members, are appropriate under the circumstances and in the best interests of the Debtor's Estate and Holders of Claims.

2.      General Releases by Holders of Claims or Interests

As of the Effective Date, all Holders of Allowed Claims and the current and former members, managers, Holders of Equity Interests, and employees of the Debtor (in their capacity as such) shall forever release, waive and discharge all Claims, obligations, suits, judgments, demands, debts, rights, causes of action and liabilities (other than the right to enforce the Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan, and in the event of gross negligence or fraud), whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to (i) the Debtor; (ii) the parties released pursuant to the Releases; (iii) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan; (iv) the solicitation of acceptances and rejections of the Plan; (v) the solicitation of the Releases; (vi) the Chapter 11 Case; (vii) the property to be distributed under the Plan; or (viii) any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Case, against each of (a) the Debtor's Professionals; (b) the Committee's Professionals; (c) each member of the Committee in its capacity as such; (d) the Debtor; (e) the current and former members, managers, Holders of Equity Interests, and employees of the Debtor; and (f) the Creditor Trustee.

Unlike with the Debtor Releases, these releases do not impact proceeds that will be available for distribution by the Creditor Trust, since the releases are by Holders of Claims and the other parties listed above. Rather, the idea is that if the releasing parties are voting to accept the Plan and the benefits thereunder, it is appropriate for them to release the parties whose effort made the Plan possible.

3.      Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document assumed, entered into or delivered in connection with the Plan, after Effective Date and concurrently with the applicable Distributions made pursuant to Article III of the Plan, all mortgages, deeds of trust, liens, or other security interests against any property shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, shall revert to the Creditor Trust. For clarification, all Liens shall be released upon sale of the assets in which individual Claimants were secured and distributions have been made to each individual creditor which had a security interest in said assets in accordance with Article II of the Plan.

4.      Injunction Related to Releases

In order to effectuate the Plan, allow for an orderly distribution of assets, and to effectuate the Releases described above, the Plan contains injunction provisions that, as described in greater

detail in the Plan, enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any action against: (a) the Debtor or its property; (b) the Creditor Trust or its property; and (c) any transferee of the foregoing parties.

5.     Cancellation and Surrender of Instruments, Securities and Other Documentation

Except as otherwise provided in the Plan or in any contract, instrument or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article V of the Plan, the holders of or parties to such cancelled instruments, securities, and other documentation shall have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided pursuant to the Plan.

## H.     Exculpation

Subject to section 1125(e) of the Bankruptcy Code, neither the Debtor, its Estate, the Committee, the Oversight Committee, the Creditor Trust nor any of their respective present or former advisors, attorneys, or agents acting in such capacity, shall have or incur any liability to, or be subject to any right of action by, the Debtor or any Holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective agents, shareholders, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, (a) any act taken or omitted to be taken on or after the Petition Date, (b) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan, (c) the solicitation of acceptances and rejections of the Plan, (d) the Releases or the solicitation thereof, (e) the Chapter 11 Case, (f) the administration of the Plan, (g) the distribution of property under the Plan, and (h) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Case, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## I.     Preservation of Causes of Action / Reservation of Rights

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtor or the Reorganized Debtor may have or which the Reorganized Debtor may choose to assert on behalf of its Estate under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, the Reorganized Debtor, their officers, directors, or representatives, (ii) the turnover of any property of the Debtor's Estate, and (iii) Causes of Action against current or former directors, officers, professionals, agents, financial advisors, underwriters, lenders, or auditors relating to acts or omissions occurring prior to the Petition Date.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Cause of Action, right of setoff, or other legal or equitable defense which

the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Creditor Trust shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all of the Creditor Trust's legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

## X.   MODIFICATION OF THE PLAN

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, in its sole discretion, to amend or modify the Plan at any time prior to the entry of the Confirmation Order. Upon entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder and the votes of each Class for or against the Plan shall be counted and used in connection with the modified plan of reorganization. The Debtor reserves the right to amend any exhibits or schedules to the Pan, whereupon each such amended exhibit or schedule shall be deemed substituted for the original of such exhibit. The Debtor shall provide notice of any amendments to any exhibit or schedule to the parties affected thereby.

After the Confirmation Date, the Debtor or Creditor Trustee may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies within or among the Pan, the Disclosure Statement, and the Confirmation Order, and to accomplish such matters as may be reasonably necessary to carry out the purposes and intent hereof. A Holder of a Claim or Equity Interest that has accepted the Pan shall be deemed to have accepted the Pan, as altered, amended or modified, if the proposed alteration, amendment, modification or remedy does not materially and adversely affect the treatment of the Claim or Equity Interest of such Holder hereunder.

## XI.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The Debtor has not sought or obtained rulings from the Internal Revenue Service or any state or local taxing authority with respect to the tax consequences, if any, of the Plan and the transactions contemplated under either of the foregoing. **CREDITORS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE CONSEQUENCES TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS OF THE CONSUMMATION OF THE PLAN**

## XII.   ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtor and the Committee believe that the Plan affords Creditors the potential for the greatest realization on the Debtor's assets and, therefore, is in the best interests of such Holders.

If, however, the Requisite Acceptances to confirm the Plan are not received, or the Plan is not subsequently confirmed and consummated, the theoretical alternatives include: (i) formulation of an alternative plan or plans of reorganization or (ii) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

### A.    Alternative Plan(s)

If the Requisite Acceptances to confirm the Plan are not received or if the Plan is not confirmed (or, if the Debtor's exclusive periods in which to file and solicit acceptances of a reorganization plan have expired), any other party in interest could attempt to formulate and propose a different plan or plans of reorganization. Such a plan or plans might involve either a reorganization and continuation of the Debtor's businesses or an orderly liquidation of assets.

With respect to an alternative plan, the Debtor has had extensive discussions and negotiations with potential sources of financing concerning either the possible investment in the Debtor or the sale of the Debtor's assets. The Debtor has also explored various other alternatives in connection with the extensive negotiation process involved in the formulation and development of the Plan. The Debtor believes that the Plan, as described herein, enables Creditors to realize the greatest possible value under the circumstances, and that, as compared to available alternatives, the Plan has the greatest chance to be confirmed and consummated and will result in the best recovery for Creditors.

### B.    Liquidation under Chapter 7

Proceeding under Chapter 7 would impose significant additional monetary and time costs on the Debtor's Estate, and would limit the options for achieving an optimal outcome. Under Chapter 7, one or more trustees would be elected or appointed to administer the Estate, to resolve pending controversies, including Disputed Claims against the Debtor and Claims of the Estate against other parties, and to make distributions to Holders of Claims. A Chapter 7 trustee would be entitled to compensation in accordance with the scale set forth in section 326 of the Bankruptcy Code, and the trustee would also incur significant administrative expenses.

There is a strong probability that a Chapter 7 trustee in this case would not possess any particular knowledge about the Debtor. The value of the Debtor's assets would likely be greatly diminished thereby. Additionally, a trustee would probably seek the assistance of professionals who may not have any significant background or familiarity with this case or the corn oil industry. The trustee and any professionals retained by the trustee likely would expend significant time familiarizing themselves with this case. This would result in duplication of effort, increased expenses and delay in payments to Creditors.

In an analysis of liquidation under Chapter 7, it must be recognized that additional costs in both time and money are inevitable. In addition to these time and monetary costs, there are other factors in a Chapter 7 liquidation that the Debtor believes would result in a substantially smaller recovery for Creditors than under the Plan. Primary among these factors is the Debtor's belief that the liquidation of the Debtor's assets in a Chapter 7 proceeding would result in significantly less proceeds available for distribution to Creditors than under the proposed Plan or in a sale outside of bankruptcy.

Further, distributions under the Debtor's proposed Plan probably would be made earlier than would distributions in a Chapter 7 case. In contrast to the Plan, which contemplates distributions to Creditors in the ordinary course, if approved by the Bankruptcy Court, but, in any event, as soon as practicable after the Effective Date, distributions of the proceeds of a Chapter 7 liquidation might not occur until one or more years after the completion of the liquidation in order to afford the trustee the opportunity to resolve claims and prepare for distributions.

Therefore, the likely form of any liquidation would be the sale of individual assets. It is likely that a liquidation of the Debtor's assets would produce less value for distribution to Creditors than that recoverable in each instance under the Plan. In the opinion of the Debtor and the Committee, the recoveries projected to be available in liquidation will not afford Creditors as great a realization as does the Plan.

**THE DEBTOR AND THE COMMITTEE BELIEVE THAT THE PLAN AFFORDS SUBSTANTIALLY GREATER RECOVERY TO CREDITORS THAN SUCH HOLDERS WOULD RECEIVE IF THE DEBTOR WERE LIQUIDATED UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**.

## XIII.   CERTAIN FACTORS TO BE CONSIDERED

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF ELIGIBLE CLAIMS AND ELIGIBLE EQUITY INTERESTS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION. ADDITIONAL RISKS AND UNCERTAINTIES NOT PRESENTLY KNOWN TO THE DEBTOR OR THAT IT CURRENTLY DEEMS IMMATERIAL MAY ALSO HARM ITS BUSINESS.

## XIV.   RISK FACTORS

Prior to voting on the Plan, each holder of a Claim entitled to vote should consider carefully the risk factors described below, as well as all of the information contained in this Disclosure Statement, including the Exhibits hereto. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan in its implementation. See Section VIII for a discussion of certain tax considerations in connection with the Plan.

### A.      Risks in connection with the Reorganization Case

#### 1.      Risk of Non-Confirmation of the Plan

Even if all impaired Classes accept or are deemed to accept the Plan, the plan may still not be confirmed by the Bankruptcy Court. Section 1129 of the Bankruptcy Code, which sets forth the requirements for Confirmation, requires, among other things: (a) that Confirmation not be followed by a need for further reorganization or liquidation (i.e., that the plan is "feasible"); (b) that the value of distributions to dissenting holders not be less than the value of distributions to such holders if the Debtor were liquidated under chapter 7 of the Bankruptcy Code; and

(c) that the Plan and the Debtor otherwise comply with the applicable provisions of the Bankruptcy Code.  Although the Debtor and the Committee believe that the Plan will meet all of the applicable requirements, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2.        Nonconsensual Confirmation

Pursuant to the "cramdown" provisions of section 1129 of the Bankruptcy Code, the Bankruptcy Court can confirm the Plan at the Debtor's request if, excluding the acceptance of any "insider," at least one impaired Class has accepted the Plan and the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired Class that has not accepted the Plan.

The Debtor, upon concurrence with the Committee, reserves the right to modify the terms of the Plan, as necessary, to seek Confirmation without the acceptance of all impaired Classes.  Such modification could result in less favorable treatment for non-accepting Classes of Claims than the treatment currently provided for in the Plan.  Further, in the event an impaired Class of Claims fails to approve the Plan, the Debtor may determine, upon concurrence with the Committee, not to seek Confirmation of the Plan.

3.        Conditions Precedent to the Effectiveness of the Plan

Even if confirmed, the Plan may still not become effective if the conditions to effectiveness of the Plan are not satisfied, or duly waived in accordance with the Plan. *See* Section VII of the Plan for a description of the conditions to the effectiveness of the Plan.

4.        The Debtor May Object to the Amount, or the Secured or Priority Status, of a Claim

The Debtor reserve the right to object to the amount, or the Secured or Priority status, of any Claim until such time as the Plan is Confirmed.  Any such Holder of a Claim will receive its specified share of the estimated distributions described in the Disclosure Statement only to the extent its Claim becomes an Allowed Claim.

5.        Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, even after Confirmation of the Plan, the Creditor Trust will retain and may enforce causes of action against creditors. Accordingly, a holder of a Claim may be subject to one or more such claims brought by the Creditor Trust, even if such holder has voted in favor of the Plan.

6.        Failure to Enter Into a Sale Transaction or Refinancing Transaction

While the Debtor anticipates that the Winterquist Transaction will close prior to September15, 2015, failure to enter into a Sale Transaction will not prohibit the Creditor Trustee from consummating a sale.  However, if the Creditor Trustee determines that a sale is improbable, then the Creditor Trustee may liquidate the assets and pay Creditors according to the payment

scheme described in the Plan and the Disclosure Statement.

## XV.  GENERAL PROVISIONS

### A.      Definitions and Rules of Construction

The definitions and rules of construction stated in sections 101 and 102 of the Bankruptcy Code apply when terms defined or construed in the Bankruptcy Code are used in the Pan.

### B.      Captions and Headings

The article and section headings used in the Plan are for convenience and reference only, and they do not constitute a part of the Plan or in any manner affect the terms, provisions, or interpretations of the Plan.

### C.      Corporate Governance

Pursuant to section 1123(a)(6) of the Bankruptcy Code, the Articles of Organization and Operating Agreement of the Debtor shall be amended, to the extent necessary and appropriate, to prohibit the issuance of nonvoting equity securities, and providing, as to the classes of securities possessing voting power, an appropriate distribution of such power among such classes.

### D.      Severability

Should any term or provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of the Plan; provided, however, that this provision shall not be applied or interpreted so as to defeat the primary purpose of the Pan, which is to restructure the Debtor's obligations to its Creditors according to the treatment afforded to their Claims under the Plan.

### E.      Governing Law

Except to the extent that the Bankruptcy Code or other provisions of federal law are applicable, the rights and obligations arising under the Plan in any documents, agreements, and instruments executed in connection with the Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Iowa.

### F.      Successors and Assigns

The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

*[Remainder of Page Intentionally Left Blank]*

36

Respectfully submitted,


**MARK SEED COMPANY**



By _____*/s/ Paul Aschim*_____
        Paul Aschim
Its:    Acting CFO



*/s/ Bradley R. Kruse*_____
Bradley R. Kruse, Esq.
**BROWN, WINICK, GRAVES, GROSS,
BASKERVILLE AND SCHOENEBAUM, P.L.C.**
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone:  515-242-2460
Facsimile:  515-323-8560
Email:  kruse@brownwinick.com

COUNSEL FOR THE DEBTOR



*/s/Matthew E. McClintock*_____
Matthew E. McClintock, Esq.
Brian J. Jackiw, Esq.
Sean P. Williams, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
208 South LaSalle, Suite 1750
Chicago, Illinois  60604
Telephone:  312-337-7700
Facsimile:  312-277-2305

COUNSEL FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS